UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

J & J SPORTS PRODUCTIONS, INC., as
Broadcast Licensee of the May 5, 2007
DeLaHoya/Mayweather Program,

                Plaintiff,

      - against -

MERCY ARHIN, Individually and d/b/a
MERCY ENTERPRISES a/k/a MEYTEX
LOUNGE, and MERCY ENTERPRISES a/k/a
MEYTEX LOUNGE,

                Defendants.

- - - - - - - - - - - - - - - - - - X

REPORT AND
RECOMMENDATION

CV 2007-2875 (SJ)(MDG)

Go, United States Magistrate Judge:

    Plaintiff J & J Sports Productions, Inc. ("plaintiff") brings this action under Title 47 of the United States Code alleging that defendants Mercy Arhin ("Arhin") and Mercy Enterprises (collectively referred to as "defendants") violated sections 553 and 605 by intercepting and displaying to their customers, without plaintiff's authorization, a pay-per-view cable television broadcast.

    After entry of default following defendants' failure to appear or otherwise defend in this action (ct. doc. 6), the Honorable Sterling Johnson referred plaintiff's motion for default judgment to me to report and recommend on the issue of damages. See ct. doc. 7.

PERTINENT FACTS

The facts pertinent to determination of this motion are undisputed and are set forth in the Complaint ("Compl.") (ct. doc. 1); the September 18, 2007 affidavit of Joseph Gagliardi, President of plaintiff ("Gagliardi Aff.") (ct. doc. 5-2); the September 26, 2007 affidavit of Julie Cohen Lonstein, Esq., counsel for plaintiff ("Lonstein Aff.") (ct. doc. 5-9); the April 5, 2007 affidavit of investigator James Russo ("Russo Aff.") (attached as Exhibit C to the Gagliardi Aff.); and Plaintiff's Response to Order to Show Cause (ct. doc. 9). Defendants did not file any opposing papers.

Plaintiff is a corporation organized under the laws of the State of California, with its principal place of business located in Campbell, California. Compl. at ¶ 5. Mercy Enterprises a/k/a Meytex Lounge is a business entity located at 545 Flatbush Avenue, Brooklyn, New York. Id. at ¶ 10. Defendant Arhin resides in the State of New York. Id. at ¶ 6.

Plaintiff owns the rights to distribute via closed-circuit television and encrypted satellite signal the DeLaHoya/Mayweather boxing match scheduled for May 5, 2007 (the "program"). Id. at ¶ 15; Gagliardi Aff. at ¶ 3. It entered into sub-license agreements with various entities to show the program to their patrons in broadcasts which originated as a satellite uplink and was re-transmitted by plaintiff to cable and satellite providers via a satellite signal. See Compl. at ¶¶ 15-16; Gagliardi Aff.

at ¶ 3.

Defendants did not enter into any contract with plaintiff and thus, were not authorized to receive and publish the program. Gagliardi Aff. at ¶ 6. As set forth in his affidavit, investigator James Russo observed the unauthorized public showing of the program at Meytex Lounge to 20 customers. Russo Aff. at 2. Entering the establishment at approximately 12:10 a.m. on May 6, 2007, investigator Russo observed, <u>inter alia</u>, the boxing match between DeLaHoya and Mayweather. <u>Id.</u> at 1.

After commencement of this action and entry of default against both defendants, Judge Johnson referred plaintiff's motion for default judgment to me for report and recommendation. Ct. docs. 6, 7. However, because the returns of service showed that service on both the individual and the entity defendant, Mercy Arhin and Mercy Enterprises, respectively, was alleged to have been effectuated by service on Mercy Arhin at two different locations at the same time, this Court issued an order requiring plaintiff to show cause why entry of default should not be vacated for insufficient service. <u>See</u> electronic order dated 10/11/07. Plaintiff subsequently withdrew the original affidavit of personal service on Mercy Arhin filed as court document 4 and submitted an "amended" affidavit of service indicating that plaintiff had served Mercy Arhin at the same location where plaintiff originally served Mercy Enterprises. <u>See</u> ct. docs. 9, 10. Because Judge Johnson subsequently "so ordered" plaintiff's notice of withdrawal of the first affidavit of service (ct. doc.

14), service is properly made in light of the amended return filed. However, this Court is constrained to note that plaintiff's conduct again calls into question the veracity of its affidavits of service filed, which occurred in an earlier case brought by plaintiff against the same defendants. See order filed 4/10/07 in J & J Sports Productions, Inc. v. Mercy Arhin and Mercy Enterprises a/k/a Meytex Lounge, CV-06-6519 (NGG)(JO) (ct. doc. 9). If such errors are repeated, this Court will not be willing to accept plaintiff's shuffling or recharacterization of affidavits of service to establish proper service.

In addition, service was proper despite the plaintiff's misnaming of the entity defendant in the complaint, summons and affidavit of service -- "Mercy Enterprises." The correct name on file with the New York Secretary of State is "Mercy Enterprises, Inc." See http://www.dos.state.ny.us. Nevertheless, the principal of the intended defendant, who was served with the summons and complaint, could not have been confused as to the intended defendant merely because of the absence of "Inc." See Morrel v. Nationwide Mut. Fire Ins. Co., 188 F.3d 218, 223-24 (4th Cir. 1999) (service of process was effective despite omission of "Inc." in defendant's name); Hansen v. AON Risk Servs. of Texas, Inc., No. Civ.A. H-05-3437, 2006 WL 846363, at *2 (S.D. Tex. Mar. 31, 2006) (same); Rosado-Morales v. JC Penney, Inc., No. Civ. 05-1532, 2005 WL 3263056, at *2 (D.P.R. Dec. 1, 2005) (omission of word "corporation" in defendant's name did not render service ineffective).

DISCUSSION

I.  Legal Standards Governing Default

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. Greyhound, 973 F.2d at 159. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." Id.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). The moving party is entitled to all reasonable inferences from the evidence it offers. Au Bon Pain, 653 F.2d at 65 (citing Trans World Airlines, Inc. v. Hughes, 308 F. Supp. 679, 683

(S.D.N.Y. 1969)).

II. Determination of Damages

A. Liability

Both sections 553 and 605 of Title 47 prohibit the unauthorized reception of cable programming. Section 553(a)(1) specifically applies only to cable transmissions and provides that, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 605(a) generally provides that, "[n]o person not being authorized by the sender shall intercept any radio communication . . . or assist in receiving any interstate or foreign communication by radio and use such communication . . . for his own benefit or the benefit of another not entitled thereto." When television programming is transmitted or intercepted over both cable and satellite mediums, both sections 553 and 605 apply. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130 (2nd Cir. 1996) ("Sykes II") (noting that section 605 applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions); see also Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002).

Plaintiff establishes in its submissions that it had the right to distribute the program, which originated via satellite

-6-

uplink, and that the program was displayed in violation of sections 553 and 605 of Title 47.  Compl. at ¶¶ 15-19; Russo Aff. at 1-2; Gagliardi Aff. at ¶¶ 3, 6, 8.  Investigator Russo observed the program being displayed at Meytex Lounge, a business alleged to be operated by defendants, even though defendants had not contracted with plaintiff to do so.  Russo Aff. at 1-2.  Consequently, this Court finds that there was unlicensed reception and exhibition of the transmissions at Meytex Lounge in violation of sections 553 and 605 of Title 47.

However, the liability of defendant Mercy Arhin, the individual defendant, involves different and additional considerations from the liability of the corporate defendant Mercy Enterprises.  A party may be vicariously liable for infringement if he has "the right and ability to supervise" the infringing activities and had "an obvious and direct financial interest in the exploitation of [the] copyrighted materials" or contributorily liable if he "authorized" the infringing conduct.  See Softel, Inc. v. Dragon Med. & Sci. Comm., Inc., 118 F.3d 955, 971 (2d Cir. 1997); Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971); Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963).  Plaintiff alleges in the complaint that Mercy Arhin is the principal of Meytex Enterprises, has supervisory control over its activities and received a financial benefit from its operations on May 5, 2007.  Compl. at ¶¶ 8-9.  These allegations,

even though alleged upon information and belief, are deemed admitted. See Fong v. United States, 300 F.2d 400, 409 (9th Cir. 1962) (finding allegations on information and belief sufficient to hold defendant individually liable on default judgment because they stated facts primarily within defendant's knowledge); 71 C.J.S. Pleading § 82. In addition, plaintiff demonstrates that defendant Arhin is named as the principal of Meytex Lounge in the records of the New York State Division of Alcoholic Beverage Control State Liquor Authority. See Lonstein Aff., Exh. B. Thus, I recommend that the individual defendant Mercy Arhin and the corporate defendant Meytex Enterprises be held jointly and severally liable for violating Title 47.

    B.    Damages

Plaintiff requests damages pursuant to section 605, rather than section 553. Pl.'s Mem. at 3. Where a defendant is liable under both sections 553 and 605, the plaintiff is entitled to have damages awarded under section 605 because it provides greater recovery than does section 553. See Sykes II, 75 F.3d at 127; Entm't by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (recovery under both sections 553 and 605 is impermissible).

Section 605 allows plaintiff to elect to recover either actual damages and lost profits or statutory damages. See 47 U.S.C. § 605(e)(3)(C)(i). Section 605(e)(3)(C)(i)(II) authorizes

statutory damages of no less than $1,000 and no more than $10,000 for each violation of section 605(a). That section vests the court with the discretion to determine the amount of statutory damages, authorizing the court to award an amount "as the court considers just." See Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993); see also Joe Hand Promotions, Inc. v. Nekos, 18 F. Supp. 2d 214, 217 (N.D.N.Y. 1998) (the court has "discretion to adjust the amount awarded to the plaintiff"). In addition, section 605(e)(3)(C)(ii) vests the court with the discretion to increase the award of damages where "the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain." The court is authorized to award enhanced damages of up to $100,000 for each willful violation.

In exercising such discretion, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy. See Cablevision Sys. New York City Corp. v. Faschitti, No. 94 Civ. 6830, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996); see also Sykes II, 75 F.3d at 132 (quoting legislative history). The court should therefore grant damages in an amount which achieves the deterrent purposes of the statute. See Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 113 (E.D.N.Y. 1997).

Plaintiff seeks to recover the maximum statutory damages allowed in the amount of $10,000 and enhanced damages up to

$100,000 for each defendant's willful violation of section 605. Pl.'s Mem. at 7.  Some courts have simply assessed a flat damages amount per violation.  See Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004) (awarding $1,000 statutory damages and $1,500 enhanced damages for a one-time boxing match exhibited to about 20 customers); Garden City Boxing Club, Inc. v. Ayisah, 02 Civ. 6673, 2004 U.S. Dist. LEXIS 7867 (S.D.N.Y. Apr. 28, 2004) (awarding $3,000 statutory damages and $5,000 enhanced damages for a one-time boxing match exhibited to 60 customers); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438 (S.D.N.Y. 2001) (awarding $5,000 statutory damages for a one-time boxing match exhibited to 30 customers).

When presented with sufficient evidence indicating the number of patrons present at the time of the unauthorized programming, other courts have employed a formula that multiplies that number by a dollar amount, usually based on the customary charge for the event in question.  See, e.g., Mama Zee, 2002 WL 2022522, at *3 (awarding $50 per patron), Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (same); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same). A number of judges in this district have awarded damages based on the number of patrons or the capacity of an establishment multiplied by the residential fee for a pay-per-view broadcast.

See, e.g., Kingvision Pay-Per-View Ltd. v. Cazares, No. CV-05-2934, 2006 WL 2086031, at *3-*4 (E.D.N.Y. July 25, 2006) (adopting recommendation of statutory damages award based on $54.95 residential rate for each patron present during broadcast of event); Garden City Boxing Club, Inc. v. Rosado, No. CV-05-1037, 2005 WL 3018704, at *4 (E.D.N.Y. Oct. 6, 2005) (recommending statutory damages award of $989.10 based on $54.95 for each of the 19 patrons observed in the establishment); Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damages based on $54.95 residential rate for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity). Courts using the residential fee reason that this is the amount each patron would have paid to view the boxing match from home had he or she not had access to a broadcast at the establishment at issue. See Bello, 2005 WL 2496062, at *3. Although plaintiff has not submitted any evidence as to the residential rate for this broadcast, the typical purchase price for a pay-per-view broadcast of this nature is $54.95. See Cazares, 2006 WL 2086031, at *3; Rosado, 2005 WL 3018704, at *3; Bello, 2005 WL 2496062, at *3.

Plaintiff has submitted evidence that 20 customers were present at Meytex Lounge when investigator Russo observed the program being illegally displayed. Russo Aff. at 1-2. I respectfully recommend that damages be awarded based on 20

customers multiplied by the residential rate of $54.95, which would amount to approximately $1,100.

Further, I recommend that the Court grant plaintiff's request for enhanced damages against defendants. Defendants who intercept signals and broadcast programming without authorization "in a place of business where certain events are shown to the public" are generally held to have acted willfully and for purposes of commercial advantage. Am. Cablevision of Queens v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350 (E.D.N.Y. Mar. 20, 1991)). Since knowledge of infringement may be "actual" or "constructive," it need not be proven directly and can be inferred from the defendant's conduct. See Knitwaves, Inc. v. Lollytogs, Ltd., 71 F.3d 996, 1010 (2d Cir. 1995); N.A.S. Import Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992). A defendant's default may also be considered as evidence of willful infringement. See Kenneth J. Lane, Inc. v. Heavenly Apparel, Inc., No. 03 CV 2132, 2006 WL 728407, at *6 (S.D.N.Y. March 21, 2006); Peer Int'l Corp. v. Max Music & Ent'mt, No. 03 Civ. 0996, 2004 WL 1542253, at *3 (S.D.N.Y. July 9, 2004); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). Courts consider a variety of factors to determine whether a defendant's willful conduct warrants enhanced damages. These factors include: "repeated violations over an extended period of time; substantial unlawful

monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums for food and drinks."  Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted).

The undisputed facts presented by plaintiff in its complaint and the supporting affidavits clearly establish that Meytex Lounge is a commercial establishment that publicly displayed the DeLaHoya/Mayweather boxing match to customers without authorization.  Thus, I recommend that enhanced damages in the amount of $3,000 be awarded against defendants.[1]

C. Costs

Plaintiff seeks to recover its costs totaling $550.00.[2] Lonstein Aff. at ¶ 3.  Title 47 U.S.C. § 605(e)(3)(B)(iii) mandates that reasonable costs be awarded to a prevailing aggrieved party.  Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993) ("Sykes I").  In support of that request, plaintiff has submitted an affidavit from Julie Cohen Lonstein

---

[1] Had plaintiff successfully obtained a judgment against the defendants in the earlier action filed against them, this Court may have considered higher enhanced damages since there would be little question of willfulness.  However, plaintiff voluntarily dismissed that action.

[2] In the Wherefore clause of Ms. Lonstein's affidavit, she requests costs in the amount of $275.  However, paragraph 3 of her affidavit and the exhibits attached thereto reflect expenses in the amount of $550.

attesting to the payment of $350 for filing fees and $200 for service of process fees. Lonstein Aff. at ¶ 3, Exh. A. Plaintiff's request for filing fees and service of process fees is reasonable. Thus, I recommend that the Court award costs of $550.

CONCLUSION

For the foregoing reasons, I respectfully recommend that this Court award plaintiff judgment against defendants Mercy Arhin and Mercy Enterprises in the amount of $1,100 in damages, $3,000 in enhanced damages and $550 in costs, for a total judgment of $4,650.

This report and recommendation will be filed electronically and a copy sent by overnight delivery to the defendants on this date. Any objections must be filed with the Clerk of the Court, with a copy to the Honorable Sterling Johnson and the other party, on or before April 16, 2009. Failure to file timely objections may waive the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**SO ORDERED.**

Dated:   Brooklyn, New York
         March 30, 2009

                                        /s/
                                        _____
                                        MARILYN D. GO
                                        UNITED STATES MAGISTRATE JUDGE